**No. 26-599**

_____

**IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT**

JUSTIN PRICE,

*Plaintiff-Appellant,*

v.

DICK'S SPORTING GOODS, INC., et al

*Defendant-Appellee.*

On Appeal from the United States District Court
for the Western District of Washington
No. 3:24-cv-05585
Hon. Theresa L. Fricke

**APPELLANT'S OPENING BRIEF**

Sarah L. Lee
Trial Lawyer
705 S. 9th St., Suite #104
Tacoma, WA 98405
253-234-5614
Sarah3@sarahleelaw.com

*Attorney for Appellant*
Justin Price

# TABLE OF CONTENTS

| | |
|---|---|
| **Table of Contents** | **i** |
| **Table of Authorities** | iv |
| **Introduction** | 1 |
| **Jurisdictional Statement** | 4 |
| **Issues Presented for Review** | 5 |
| **Statement of the Case** | 7 |
| A.  Factual Background | 7 |
| B.  Procedural History | 11 |
| C.  The District Court's Ruling | 13 |
| **Standard of Review** | 14 |
| **Summary of Argument** | 15 |
| **Argument** | 19 |
| I.  THE DISTRICT COURT ERRED IN GRANTING SUMMARY JUDGMENT BECAUSE GENUINE ISSUES OF MATERIAL FACT EXIST AS TO DICK'S DUTY AND BREACH. | 19 |
| A.  Standard: Summary Judgment May Not Resolve Contested Questions of Fact. | 19 |
| B.  Dick's Owed Justin Price the Highest Duty of Care as an Escalator Operator and a Duty of Reasonable Care as a Landowner to a Business Invitee. | 20 |
| C.  Dick's Employee Smith Created the Dangerous Condition by Affirmatively Leading Price Onto the Escalator with Bulky, Hazardous Merchandise — In Violation of Dick's Own Policies. | 22 |
| D.  The District Court Misread Tinder v. Nordstrom. | 26 |
| E.  Descriptions Such as "Violent" and "Abrupt" Are Relevant to Whether the Escalator Operated in a Manner Consistent with a Common Carrier's Duty of Highest Care. | 28 |
| II.  THE DISTRICT COURT ABUSED ITS DISCRETION IN REFUSING TO CONSIDER PRICE'S OPPOSITION BRIEF BECAUSE THE DELAY RESULTED FROM CIRCUMSTANCES ENTIRELY OUTSIDE COUNSEL'S CONTROL AND CONSTITUTED EXCUSABLE NEGLECT. | 30 |
| A.  The Excusable Neglect Standard Is Equitable and Multifactorial. | 30 |
| B.  All Four Pioneer Factors Weigh in Price's Favor. | 31 |

| | |
|---|---|
| C.  Even If the Brief Were Properly Stricken, the Court Retained an Independent Duty to Review the Exhibits. | 35 |
| III.  THE DISTRICT COURT ERRED IN DENYING PRICE'S RULE 56(d) REQUEST FOR A CONTINUANCE PENDING FULL DISCOVERY. | 36 |
| A.  Rule 56(d) Authorizes a Continuance When Discovery Necessary to Oppose Summary Judgment Remains Outstanding. | 36 |
| B.  Price's Opposition Brief Contained a Sufficient Rule 56(d) Request. | 38 |
| C.  The District Court's Rejection of the Rule 56(d) Request Was Circular and Constituted an Abuse of Discretion. | 39 |
| D.  Additional Discovery — Particularly Footage from the Second Camera — Was Material and Could Have Defeated Summary Judgment. | 40 |
| IV.  THE DISTRICT COURT ERRED IN REJECTING PRICE'S SPOLIATION ARGUMENT BECAUSE PHOTOGRAPHS IN THE RECORD CONFIRM THE EXISTENCE OF AN UNDISCLOSED SECOND CAMERA. | 42 |
| A.  Spoliation and the Duty to Preserve. | 42 |
| B.  The Record Evidence — Photographs — Establishes the Existence of the Second Camera. | 44 |
| C.  Dick's Failure to Disclose the Second Camera Warrants an Adverse Inference Instruction. | 46 |
| **Conclusion** | 48 |
| **Certificate of Compliance** | 50 |
| **Certificate of Service** | 51 |

iii

# TABLE OF AUTHORITIES

## Cases

| | |
|---|---|
| ***Ahanchian v. Xenon Pictures, Inc.*, 624 F.3d 1253 (9th Cir. 2010)** | **14, 30, 31, 33** |
| *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) | 14, 19, 20 |
| *Bateman v. United States Postal Service*, 231 F.3d 1220 (9th Cir. 2000) | 30 |
| *Beebe v. Moses*, 113 Wn. App. 464 (2002) | 21 |
| *Briones v. Riviera Hotel & Casino*, 116 F.3d 379 (9th Cir. 1997) (per curiam) | 34 |
| *Dabroe v. Rhodes Co.*, 64 Wash.2d 431 (1964) | 20 |
| *Family Home & Finance Center, Inc. v. Federal Home Loan Mortgage Corp.*, 525 F.3d 822 (9th Cir. 2008) | 36, 37 |
| *Galassi v. Lowe's Home Centers, LLC*, 4 Wn.3d 425 (2025) | 15, 25 |
| *Henry v. Gill Industries, Inc.*, 983 F.2d 943 (9th Cir. 1993) | 35 |
| *Knutson v. Macy's W. Stores, Inc.*, 1 Wash. App. 2d 543 (2017) | 20 |
| *Marshall v. Gates*, 44 F.3d 722 (9th Cir. 1995) | 35 |
| *Metabolife Int'l, Inc. v. Wornick*, 264 F.3d 832 (9th Cir. 2001) | 14, 36, 37, 39, 41 |
| *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099 (9th Cir. 2000) | 14 |
| *Pedroza v. Bryant*, 101 Wn.2d 226 (1984) | 20 |
| *Pimentel v. Roundup Co.*, 100 Wn.2d 39 (1983) | 15, 22, 23, 24, 25 |
| *Pioneer Investment Services Co. v. Brunswick Associates Ltd. Partnership*, 507 U.S. 380 (1993) | 16, 30, 31 |
| *Salve Regina Coll. v. Russell*, 499 U.S. 225 (1991) | 14 |
| *Scott v. Harris*, 550 U.S. 372 (2007) | 14, 19 |
| *Tincani v. Inland Empire Zoological Soc'y*, 124 Wn.2d 121 (1994) | 20 |
| *Tinder v. Nordstrom*, 84 Wash. App. 787 (1997) | 26, 27, 28 |
| *Tolan v. Cotton*, 572 U.S. 650 (2014) | 14 |
| *United States v. Kitsap Physicians Service*, 314 F.3d 995 (9th Cir. 2002) | 42, 43, 44 |
| *Wilcoxen v. Seattle*, 32 Wash.2d 734 (1949) | 28, 29 |
| *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212 (S.D.N.Y. 2003) | 42 |

**Statutes**

| | |
|---|---|
| **28 U.S.C. § 636(c)** | **4** |
| 28 U.S.C. § 1291 | 4 |
| 28 U.S.C. § 1332 | 4 |

**Rules**

| | |
|---|---|
| **Fed. R. App. P. 32(a)(5)** | **50** |
| Fed. R. App. P. 32(a)(6) | 50 |
| Fed. R. App. P. 32(a)(7)(B) | 50 |
| Fed. R. Civ. P. 6(b)(1)(B) | 5, 13, 30 |
| Fed. R. Civ. P. 37(e) | 17, 42, 46 |
| Fed. R. Civ. P. 37(e)(2)(B) | 46, 47 |
| Fed. R. Civ. P. 56(a) | 14 |
| Fed. R. Civ. P. 56(d) | 6, 13, 17, 36, 37, 38, 39, 41 |
| W.D. Wash. LCR 7(d)(3) | 11 |

**Other Authorities**

| | |
|---|---|
| **Restatement (Second) of Torts § 332 (1965)** | **21** |

v.

**INTRODUCTION**

This appeal arises from a straightforward but important question of Washington premises liability and federal procedural law: when a retail store's own employee affirmatively leads a customer — a paying business invitee carrying two large, unwieldy tent canopies — onto a moving escalator instead of the available elevator, in direct contravention of the store's own written Vertical Transportation Policy, and that customer is injured when the escalator violently stops after the merchandise is kicked from his grip by the moving stairs, may a court grant summary judgment in favor of the store? The answer, compelled by Ninth Circuit precedent, Washington law, and basic principles of appellate procedure, is no.

On October 10, 2021, Justin Price entered the Dick's Sporting Goods store at the Tacoma Mall in Tacoma, Washington. He was there to buy merchandise — specifically, two large pop-up tent canopies and accompanying tent weights. The canopies were located on the store's second floor. The merchandise was heavy and awkward: the tent weights alone weighed eighty pounds, and the canopies were large, bulky items that could not comfortably be carried by a single person down a moving staircase. Recognizing this reality, Price did exactly what a reasonable customer would do: he asked a store employee for help. Dick's employee Bailey Roger Smith agreed to assist.

What followed is not disputed in its broad outlines. Smith took charge of the heavy weights. Without mentioning the elevator — a fully operational alternative

means of descending from the second floor to the first-floor registers — Smith led Price toward the escalator. He chose the escalator, in his own words, because it was "the quicker way down." He descended first, carrying the eighty-pound weights. Price followed, carrying the two tent canopies. As Price descended the moving staircase with the canopies, one of them was "kicked out" of his grip by the movement of the escalator stairs. It slid to the bottom of the escalator and struck the comb plate — the safety mechanism located at the base of the escalator. The comb plate activation caused the escalator to stop with an abrupt, instant, and violent lurch. Price, mid-descent on the moving stairway, was thrown forward. He twisted his right knee and sustained a significant injury that required immediate medical attention.

This case presents four distinct but interrelated questions, each of which compels reversal of the district court's order granting summary judgment. First, whether Dick's — through the affirmative conduct of its employee Smith in leading Price onto the escalator with heavy, bulky merchandise — created the dangerous condition that caused Price's injury, thereby giving rise to liability under Washington's law of premises liability and common-carrier obligations for escalator operators. The evidence in this record — Smith's deposition admissions, Dick's own Vertical Transportation Policy, Hilary Rhiannon Smith's acknowledgment that a sudden escalator stop could "potentially endanger riders," and the basic physics of descending a moving staircase with large ungainly items — creates genuine disputes

of material fact as to breach, foreseeability, and causation that must be resolved by a jury, not a judge on a motion for summary judgment.

Second, whether the district court abused its discretion in refusing to consider Price's opposition brief, filed thirty-one days after the extended deadline. Price's new counsel entered this case on November 7, 2025, just six days before the original opposition deadline and barely six weeks before the re-noted deadline, inheriting an incomplete case file from former counsel, a court reporter who was out of the country and could not promptly produce a critical deposition transcript, a client who was out of state, and a defense counsel who was on vacation for five days during the filing window. These were extraordinary circumstances fully outside new counsel's reasonable control. The equitable excusable neglect standard of Federal Rule of Civil Procedure 6(b)(1)(B), as interpreted by the Supreme Court in *Pioneer Investment Services Co. v. Brunswick Associates Ltd. Partnership*, 507 U.S. 380 (1993), and by this Court in *Ahanchian v. Xenon Pictures, Inc.*, 624 F.3d 1253 (9th Cir. 2010), required the district court to weigh those circumstances in Price's favor.

Third, whether the district court erred in rejecting Price's request for a continuance under Federal Rule of Civil Procedure 56(d), which Price expressly sought in his opposition brief — a brief the district court declined to read. The district court faulted Price for not having made a proper Rule 56(d) showing, apparently unaware or unmindful that the brief it refused to consider contained precisely that request, supported by a detailed explanation of what evidence remained outstanding

and why it was essential to Price's opposition. That circularity — refusing to read the brief and then faulting the party for not making arguments found in the brief — constitutes an abuse of discretion that this Court has not and should not sanction.

Fourth, whether the district court erred in rejecting Price's spoliation argument. Photographs in the record confirm the existence of a second surveillance camera mounted directly above the downward escalator — the escalator on which Price was injured. Dick's represented in response to discovery that "no other video footage or other photographs exists." That representation was false. The second camera, had its footage been preserved and produced, would have captured the full sequence of events: Price and Smith approaching the escalator, the moment the canopy was kicked from Price's grip, Smith's position and conduct on the escalator during the incident, and Price's body's reaction to the violent stop. Dick's duty to preserve that footage arose the moment its employees witnessed Price's injury on their premises. Its failure to do so — and its affirmative representation that no other footage existed — warranted at minimum a spoliation hearing and, on the evidence presented, an adverse inference instruction under Federal Rule of Civil Procedure 37(e)(2).

The district court granted Dick's motion for summary judgment, finding no genuine issue of material fact. In doing so, it declined to consider Price's opposition brief, conducted only a cursory alternative review of the exhibits, and resolved disputed factual questions — foreseeability, breach, causation, and the scope of

Dick's duty — in Dick's favor. That ruling was legal error. Each of the four issues described above, properly analyzed under controlling precedent and viewed in the light most favorable to Price as Rule 56 requires, warrants reversal. This Court should reverse the judgment below and remand for further proceedings, including trial.

1

**JURISDICTIONAL STATEMENT**

The United States District Court for the Western District of Washington had subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332. Appellant Justin Price is a citizen of the State of Washington. Appellee Dick's Sporting Goods, Inc. is a corporation organized under the laws of the State of Delaware, with its principal place of business in Pittsburgh, Pennsylvania. The amount in controversy exceeds $75,000, exclusive of interest and costs. This action was accordingly within the diversity jurisdiction of the district court.

This case was originally filed in Pierce County Superior Court, State of Washington. Dick's Sporting Goods removed the action to the United States District Court for the Western District of Washington on July 22, 2024. Dkt. 1. Removal was timely and proper. Both parties subsequently consented to the exercise of jurisdiction by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). Dkt. 11.

The Magistrate Judge entered an Order granting Dick's Motion for Summary Judgment on January 15, 2026. ER 3. Final Judgment in favor of Defendant-

Appellee Dick's Sporting Goods, Inc. was entered on the same day. ER 2. The Judgment disposed of all claims of all parties and was therefore a final order.

Appellant Justin Price filed a timely Notice of Appeal. This Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 1291, which confers appellate jurisdiction over final decisions of the district courts of the United States.

## ISSUES PRESENTED FOR REVIEW

1.  Whether the district court erred in granting summary judgment where the record evidence — including Price's deposition testimony, the deposition of Dick's employee Bailey Roger Smith, the deposition of Dick's employee Hilary Rhiannon Smith, Dick's own Vertical Transportation Policy, and photographic evidence of a second undisclosed surveillance camera positioned directly above the downward escalator — created genuine disputes of material fact as to duty, breach, and causation sufficient to require submission of Price's negligence claims to a jury.

2.  Whether the district court abused its discretion in refusing to consider Plaintiff's opposition brief when new counsel's thirty-one-day delay resulted from circumstances entirely outside counsel's reasonable control — including an incomplete case file not transmitted by former counsel, a client who was out of state and difficult to reach, a court reporter who was out of the country and unable to timely produce the essential deposition transcript, and defense counsel's extended absence from the office — circumstances that satisfy the equitable excusable neglect

6

standard of Federal Rule of Civil Procedure 6(b)(1)(B) as construed by *Pioneer Investment Services Co. v. Brunswick Associates Ltd. Partnership*, 507 U.S. 380 (1993), and *Ahanchian v. Xenon Pictures, Inc.*, 624 F.3d 1253 (9th Cir. 2010).

3.   Whether the district court erred in denying relief under Federal Rule of Civil Procedure 56(d) when Price's opposition brief — which the court refused to read or consider in any respect — contained an express request for a continuance of the summary judgment proceeding pending full discovery, specifically identifying categories of outstanding evidence including footage from a second undisclosed surveillance camera, elevator usage records, escalator maintenance records, and employee training materials, all of which were relevant and potentially outcome-determinative, and when Price's counsel also raised the Rule 56(d) request at oral argument.

4.   Whether the district court erred in rejecting Plaintiff's spoliation argument when photographs submitted in the record confirm the physical existence of a second surveillance camera positioned directly above the downward escalator at the Dick's Sporting Goods Tacoma Mall location, when Dick's represented in response to discovery that "no other video footage or other photographs exists," when Dick's had actual notice of Price's on-premises injury from the moment it occurred, and when the footage from that second camera — had it been preserved as required — would have directly captured the sequence of events giving rise to Price's claims.

7

## STATEMENT OF THE CASE

### A. Factual Background

On October 10, 2021, Justin Price entered the Dick's Sporting Goods store at the Tacoma Mall in Tacoma, Pierce County, Washington, as a paying customer and business invitee. ER 3. He visited the store for the purpose of purchasing two pop-up tent canopies and accompanying tent weights. ER 3–4; ER 108. The merchandise he sought was located on the store's second floor. ER 112. The items were substantial: the tent weights alone weighed eighty pounds, and the two pop-up tent canopies were large, bulky, and difficult to carry — particularly when combined with the weights. ER 112. Because the merchandise was too heavy and awkward for him to carry to the first-floor checkout registers unassisted, Price sought help from a Dick's employee. ER 4; ER 112. He was directed to, or encountered, Dick's employee Bailey Roger Smith. Id. Smith agreed to assist Price in transporting the merchandise to the first floor. ER 4.

The Dick's Sporting Goods store at the Tacoma Mall was a multi-story retail facility. The checkout registers were located on the first floor. ER 27. There were two means by which customers and employees could move between the second and first floors: the escalators and an elevator. ER 27. Dick's recognized the significance of this choice: the store maintained two prominently displayed signs reading "NEED A LIFT? Elevator Located In The Exercise Department," one posted on a large easel

8

and a second mounted in a permanent holder, both positioned in proximity to the escalators. ER 113. These signs were designed to alert customers — including customers carrying large or heavy merchandise — that an elevator was available as an alternative to the escalators. ER 113.

On October 10, 2021, however, Smith did not direct Price to the elevator. Without suggesting the elevator as an alternative, without consulting or applying Dick's Vertical Transportation Policy, and without providing any warning to Price about the risks of carrying bulky tent canopies on a moving escalator, Smith led Price toward the escalator as the chosen means of descending to the first floor. ER 4; ER 24; ER 113. Smith himself acknowledged in his deposition that the escalator was "the quicker way down." ER 24–25. Smith descended the escalator first, carrying the eighty-pound tent weights himself. ER 4. Price followed directly behind Smith, carrying the two large tent canopies. ER 4.

As Price descended the escalator carrying the canopies, one of the canopies was "kicked out" of his grip by the movement of the escalator stairs. ER 4; ER 114. The canopy slid to the base of the escalator and struck the comb plate — the safety mechanism at the bottom of the escalator designed to stop the escalator when a foreign object enters the comb area. ER 4–5; ER 114. The comb plate activation caused the escalator to stop with an abrupt, instant, and violent halt. ER 4–5; ER 114. The sudden, unexpected cessation of the escalator's motion caused Price — who was mid-descent on the moving stairway — to be thrown forward and to twist his

right knee. ER 5; ER 114. Price managed to catch himself and did not fall to the ground, but he sustained a significant injury to his right knee as a direct result of the incident. ER 114.

Despite his injury, Price completed his purpose in visiting the store: he walked to the checkout counter and purchased the tent canopies. ER 5. While waiting in the checkout line, he began to experience pain and swelling in his right knee. ER 114. Following completion of his purchase, Price sought immediate medical treatment at MultiCare Urgent Care Indigo at Point Ruston. ER 114. The knee injury sustained in this incident has necessitated ongoing medical treatment and has caused Price significant pain, limitation, and economic loss.

Dick's conducted a post-incident inspection of the escalator. That inspection revealed no mechanical malfunction: the escalator had functioned precisely as designed, stopping automatically when a foreign object entered the comb plate area. ER 11 (Recardo Decl. ¶¶ 6–7). This finding, while exonerating the escalator mechanism from any mechanical defect, does not exonerate Dick's from liability. The critical question is not whether the escalator malfunctioned, but whether Dick's — through the affirmative conduct of its employee Smith — created the foreseeable dangerous condition of a customer descending a moving escalator with large, ungainly merchandise. That question remains for a jury.

Dick's employee Hilary Rhiannon Smith testified in her deposition that she did not see Price descending the escalator with the canopies until the end of the

incident — that is, she was not present and observing as the sequence unfolded. ER 114. Significantly, she acknowledged that a sudden escalator stop of the kind described in Dick's Vertical Transportation Policy — an abrupt, automatic stop triggered by an object in the comb plate — would "potentially endanger riders." ER 114. This admission is significant: it is an acknowledgment by Dick's own employee that the very type of stop that injured Price was one that Dick's recognized as dangerous to persons aboard the escalator.

Dick's Vertical Transportation Policy is a formal written policy governing the use of the store's escalators and elevator. ER 113; ER 101. That policy required Dick's employees to be alert to customers with special needs or disabilities who are using vertical transportation, to clearly indicate elevator locations for those customers who cannot use or who choose not to use escalators, and to immediately warn any passenger who is misusing or riding an escalator in an unsafe manner. ER 113; ER 101. Smith violated each of these requirements. He did not alert Price to the elevator. ER 113. He did not determine whether Price could safely carry the tent canopies down the escalator. ER 113–114. He did not warn Price of any risk associated with carrying the large, bulky canopies on a moving staircase. ER 113–114. And he did not know what caused Price to drop the canopy while aboard the escalator. ER 113–114. Smith also stated in his deposition that he had never been advised that he should use the elevator when transporting large or heavy merchandise between floors. ER 25. That training failure — a failure on Dick's part

to implement its own written policy through meaningful employee education — is further evidence of Dick's institutional breach of duty.

The record also establishes the existence of a second surveillance camera that Dick's never disclosed and whose footage Dick's represented did not exist. Photographs submitted in the record clearly depict a second camera — annotated in the record as the "Yellow" camera — positioned directly above the downward escalator, the escalator on which Price was injured. ER 115–116; ER 117. Dick's produced footage from a single camera — annotated in the record as the "Red" camera — positioned above the upward escalator, which captured only a partial and oblique view of events. ER 106; ER 117. In response to Price's discovery requests, Dick's represented that "no other video footage or other photographs exists." ER 106; ER 117. That representation was false. The second camera, positioned directly above the downward escalator, would have captured — had its footage been preserved — the full sequence: Price and Smith approaching the escalator, the moment Smith made the choice to descend the moving staircase rather than use the elevator, the moment the canopy was kicked from Price's grip by the escalator stairs, Price's body's position and motion during the abrupt stop, and the immediate aftermath of the incident. ER 115–116.

## B. Procedural History

12

This action was originally filed in Pierce County Superior Court, State of Washington. Dkt. 1-3. On July 22, 2024, Dick's Sporting Goods removed the action to the United States District Court for the Western District of Washington, citing diversity of citizenship as the basis for federal jurisdiction. Dkt. 1. Shortly thereafter, the parties consented to the exercise of jurisdiction by United States Magistrate Judge Theresa L. Fricke. Dkt. 11. The case proceeded through case management scheduling, with an initial discovery deadline set for May 15, 2025. Upon motion, the Court extended the discovery cutoff to December 1, 2025. Dkt. 27.

On October 23, 2025, Dick's Sporting Goods filed its Motion for Summary Judgment. Dkt. 29. The motion was originally noted for hearing on November 21, 2025. Under Western District of Washington Local Civil Rule 7(d)(3), Price's opposition was due twenty-one days after the filing date — that is, by November 13, 2025. On November 7, 2025 — just six days before that opposition deadline — Price's new counsel, Sarah L. Lee, entered her appearance in the case. Dkt. 34. On the same day, Price's former counsel filed a motion to withdraw. Dkt. 33.

New counsel immediately sought to manage the transition and preserve Price's ability to meaningfully oppose the motion. At new counsel's request, Dick's agreed to re-note the summary judgment motion to December 5, 2025, providing Price an extended opposition deadline of November 14, 2025 — though this was quickly superseded by the re-noting itself. Dkt. 35. Despite the re-noting, new counsel encountered a series of compounding obstacles that made timely filing impossible.

13

Former counsel had not transmitted the complete case file to new counsel. ER 54. New counsel was unable to obtain Price's deposition transcript because the court reporter who had recorded the deposition was out of the country and unable to produce the transcript promptly. ER 55. Price himself was out of state and difficult to reach during the critical preparation period. ER 55. Adding further complication, defense counsel was on vacation from November 24 through November 28, 2025, limiting the possibility of informal extensions or coordination. ER 55.

In light of these extraordinary circumstances, Price filed his opposition brief on December 17, 2025 — thirty-one days after the December 5, 2025 re-noted deadline and thirty-one days after the deadline as extended by agreement. Dkt. 38. The brief addressed the merits of Dick's summary judgment motion, included evidentiary submissions, requested in the alternative a continuance under Federal Rule of Civil Procedure 56(d), and raised the spoliation issue regarding the second camera. ER 107–108.

On December 18, 2025, the Court issued an Order to Show Cause requiring Price's counsel to explain the late filing. ER 60–61. Counsel filed a timely and detailed response, explaining the full sequence of obstacles that had prevented timely filing and attesting to the good-faith efforts made to comply with the Court's deadlines. ER 54–56. Dick's filed its reply brief on January 5, 2026. ER 40. The Court scheduled oral argument for January 13, 2026. On January 13, 2026, the Court conducted a hearing at which both parties presented argument. ER 14–36. At that

hearing, Price's counsel expressly raised the Rule 56(d) continuance request as an alternative ground for relief. ER 30.

On January 15, 2026, the Court entered its Order granting Dick's Motion for Summary Judgment. ER 3–12. Final Judgment was entered on the same day. ER 2. Price filed a timely Notice of Appeal. This appeal followed.

## C. The District Court's Ruling

In its January 15, 2026 Order, the district court first addressed Price's late opposition brief. ER 7. The court found that the circumstances explained by Price's counsel did not constitute excusable neglect sufficient to justify the thirty-one-day delay, and accordingly declined to consider the opposition brief on the merits. ER 7.

The court then conducted what it characterized as an "alternative analysis" — a review of the record evidence to determine whether, even without the opposition brief, Price could survive summary judgment. ER 7. On that alternative analysis, the court made three central findings. First, the court found that Price's Rule 56(d) continuance request was meritless because Price had not filed a separate Rule 56(d) motion or submitted the required affidavit or declaration, and had not specifically identified what facts additional discovery would reveal. ER 8. Second, the court found Price's spoliation argument meritless, concluding that Price had offered no evidence that additional surveillance footage ever existed or that any footage was destroyed after a duty to preserve had arisen. ER 9. Third, on the substantive

negligence issues, the court found that Price had not identified a defect in the escalator, had not established that Dick's had actual or constructive notice of any dangerous condition, and that the abrupt stop of the escalator — caused by Price's own dropping of merchandise — was not evidence of negligence on Dick's part. ER 10–12. The court cited *Tinder v. Nordstrom*, 84 Wash. App. 787 (1997), as dispositive authority for the proposition that an unexplained or abrupt escalator stop, standing alone, does not establish negligence. ER 10. Judgment was entered in Dick's favor. ER 2. This appeal followed.

## STANDARD OF REVIEW

This Court reviews a district court's grant of summary judgment *de novo*. *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). Summary judgment is appropriate only when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). On *de novo* review, this Court applies the same standard as the district court and must view all facts, and draw all reasonable inferences from those facts, in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 380 (2007); *Tolan v. Cotton*, 572 U.S. 650, 657 (2014). A factual dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Courts do not weigh evidence, assess credibility, or resolve contested factual issues at the summary

judgment stage. *Id.* at 255. The burden is on the moving party to demonstrate the absence of any genuine dispute of material fact; the nonmoving party need only present evidence sufficient to create a triable issue. *Id.* at 249–50.

A district court's decision to strike a party's opposition brief or refuse to consider a party's filing is reviewed for abuse of discretion. *Ahanchian v. Xenon Pictures, Inc.*, 624 F.3d 1253, 1258 (9th Cir. 2010). A district court's denial of a motion or request for a continuance of summary judgment under Federal Rule of Civil Procedure 56(d) is likewise reviewed for abuse of discretion. *Metabolife Int'l, Inc. v. Wornick*, 264 F.3d 832, 846 (9th Cir. 2001). An abuse of discretion occurs where the district court applies an incorrect legal standard, applies the correct standard in a manner that is illogical, implausible, or without support in the record, or otherwise reaches a conclusion that cannot be reconciled with the principles the standard is designed to advance. Questions of state law applicable in diversity actions are reviewed *de novo*. *Salve Regina Coll. v. Russell*, 499 U.S. 225, 231 (1991).

## SUMMARY OF ARGUMENT

This appeal presents four reversible errors, each independently sufficient to warrant remand and collectively constituting a sweeping misapplication of federal procedural law and Washington premises liability doctrine.

17

**I. The district court misapplied Washington premises liability and common-carrier law.** Dick's owed Justin Price not one but two distinct duties of care. As an operator of escalators — a common carrier under Washington law — Dick's owed its escalator passengers the highest duty of care compatible with the practical operation of its business. As a possessor of land, Dick's owed Price — an unambiguous business invitee — a duty to exercise reasonable care to discover and remedy dangerous conditions on its premises. Both duties were triggered and both were breached when Dick's employee Bailey Roger Smith, acting within the scope of his employment, led Price onto a moving escalator while Price was carrying two large, bulky tent canopies, without offering the readily available elevator, without warning Price of the risks inherent in carrying such items on a moving staircase, and in direct violation of Dick's own written Vertical Transportation Policy — a policy that existed precisely because Dick's recognized the danger.

The district court's analysis fundamentally misconceived the nature of the dangerous condition at issue. The court treated this case as one involving an unexplained escalator malfunction — and, finding no mechanical defect, concluded there was no dangerous condition and no breach. But Price's theory of liability does not rest on an escalator malfunction. It rests on the affirmative, employee-created dangerous condition: Smith's act of directing a customer carrying cumbersome merchandise onto a moving staircase when a safer alternative was available. Under *Pimentel v. Roundup Co.*, 100 Wn.2d 39 (1983), and its reaffirmation in *Galassi v.*

18

*Lowe's Home Centers, LLC*, 4 Wn.3d 425 (2025), the mode-of-operation doctrine eliminates the notice requirement entirely in circumstances where the store's own methods of operation foreseeably create dangerous conditions. Dick's operated a large-format retail store in which employees routinely assisted customers in carrying heavy merchandise from upper to lower floors — and the only routes were the escalators and an elevator. That business model, combined with Dick's recognition of the risk in its own Vertical Transportation Policy, establishes the foreseeability of the dangerous condition as a matter of law. The question whether Smith's specific conduct constituted a breach, and whether that breach caused Price's injury, are classic jury questions. The district court erred in resolving them at summary judgment.

**II. The district court abused its discretion in refusing to consider Price's opposition brief.** The excusable neglect analysis mandated by *Pioneer Investment Services Co. v. Brunswick Associates Ltd. Partnership*, 507 U.S. 380, 395 (1993), is "at bottom an equitable one" that requires consideration of the danger of prejudice to the opposing party, the length of the delay, the reason for the delay, and the good faith of the moving party. Each of these four factors weighs in Price's favor. Dick's suffered no prejudice: it filed a reply brief, participated in oral argument, and the Court conducted a full alternative review of the exhibits. The thirty-one-day delay, while not trivial, did not imperil any trial date or create any irreversible consequences for the administration of the case. The reason for the delay — the

19

collision of new counsel's entry into the case with an incomplete file, an unavailable court reporter, an out-of-state client, and a defense counsel on vacation — was wholly outside new counsel's reasonable control. And Price's counsel acted in good faith throughout, communicating with opposing counsel, promptly filing the brief upon obtaining the necessary materials, and responding expeditiously to the Order to Show Cause. Under *Ahanchian*, the federal policy favoring disposition on the merits demanded that the district court admit the brief and consider it in full. By instead elevating procedural formalism over substance, the district court committed an abuse of discretion that deprived Price of the right to have a court consider his evidence and arguments.

**III. The district court erred in denying Rule 56(d) relief through circular reasoning.** Federal Rule of Civil Procedure 56(d) exists precisely for situations like this one: where a nonmoving party cannot present facts essential to justify its opposition because discovery remains incomplete and critical evidence has not yet been produced. Price's opposition brief expressly invoked Rule 56(d), identified the specific categories of outstanding discovery — including footage from a second surveillance camera, elevator usage records, escalator maintenance records, and training materials — and explained why those materials were essential to his opposition. Price's counsel also raised the Rule 56(d) request at oral argument. The district court found that Price had not made a proper Rule 56(d) showing. But the court reached that conclusion only because it had refused to read the brief in which

Price made that very showing. To refuse to read a brief and then fault the party for not having made arguments found in that brief is a classic example of circular and impermissible reasoning that this Court has consistently rejected. *Metabolife*, 264 F.3d at 846. A Rule 56(d) continuance to obtain footage from the second camera — footage that would have directly captured the mechanism of Price's injury — was not only appropriate but compelled by the principles underlying the rule.

**IV. The district court erred in rejecting Price's spoliation argument.** The district court found that Price had offered "no evidence" that additional surveillance footage ever existed. That finding is clearly erroneous: photographs in the record establish the physical existence of a second camera positioned directly above the downward escalator. Dick's represented that no other footage existed. That representation was materially false. Dick's duty to preserve footage from that camera arose the instant its employees witnessed Price's injury on its premises — not from the date of the complaint, and not from the date of service of formal discovery. The footage from that second camera, had it been preserved as required, would have provided direct, contemporaneous visual evidence of the most disputed facts in this case. Under Federal Rule of Civil Procedure 37(e)(2)(B), a finding that Dick's acted with intent to deprive Price of that evidence would authorize an adverse inference instruction — an instruction that a jury must presume the missing footage was unfavorable to Dick's. At minimum, the existence of the second camera, Dick's false discovery response, and the absence of any explanation for the footage's

disappearance collectively create a triable issue of fact that precluded summary judgment.

## ARGUMENT

## I. THE DISTRICT COURT ERRED IN GRANTING SUMMARY JUDGMENT BECAUSE GENUINE ISSUES OF MATERIAL FACT EXIST AS TO DICK'S DUTY AND BREACH.

### A. Standard: Summary Judgment May Not Resolve Contested Questions of Fact.

The principles governing summary judgment are well established and rigorous. A court may grant summary judgment only when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In applying this standard, the court "must view the facts and draw all reasonable inferences in the light most favorable to" the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). The inquiry is whether "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). If so, the motion must be denied. The court may not resolve conflicting evidence, weigh the credibility of witnesses, or decide the truth of disputed factual assertions. *Id.* at 255. These are the province of the jury.

The district court in this case failed to honor these foundational principles. Rather than viewing the evidence in the light most favorable to Price and drawing all reasonable inferences in his favor, the court resolved the disputed questions of foreseeability, breach, and causation against him. It treated the absence of a mechanical defect as the absence of any dangerous condition. It treated the absence of a static, pre-existing hazard as an absence of breach. And it treated Smith's conduct in leading Price onto the escalator — the most salient fact in this record — as legally inconsequential. Each of these analytical moves constituted legal error. Rule 56 prohibited each of them.

## B. Dick's Owed Justin Price the Highest Duty of Care as an Escalator Operator and a Duty of Reasonable Care as a Landowner to a Business Invitee.

Washington law imposes distinct and substantial duties on Dick's in this case. The first and most demanding arises from Dick's status as an escalator operator. Washington courts treat operators of escalators as common carriers for purposes of the duty of care, holding that such operators owe escalator passengers "a duty of the highest care for its passengers' safety compatible with the practical operation of its business." *Knutson v. Macy's W. Stores, Inc.*, 1 Wash. App. 2d 543, 545 (2017); *Dabroe v. Rhodes Co.*, 64 Wash.2d 431, 434 (1964). This is not the ordinary duty of reasonable care — it is an elevated duty, one of the most demanding recognized in

Washington law, that recognizes the inherent risk of operating a mechanical conveyance that moves human beings over vertical distances. The duty encompasses not merely the mechanical condition of the escalator, but the manner in which it is operated and the circumstances under which customers are directed to use it. When Dick's employee Smith affirmatively led Price onto that escalator — Smith acting in his capacity as Dick's agent, functioning in his role as a Dick's employee assisting a customer with store merchandise — Dick's was operating the escalator vis-à-vis Price. The common-carrier duty applied in full force.

The second duty arises from Dick's status as a possessor of land. Justin Price, who entered the Dick's Sporting Goods store at the Tacoma Mall for the purpose of purchasing merchandise, was a business invitee. A business invitee is "a person who is invited to enter or remain on land for a purpose directly or indirectly connected with business dealings with the possessor." *Beebe v. Moses*, 113 Wn. App. 464, 467 (2002) (quoting Restatement (Second) of Torts § 332 (1965)). Price fits this definition unambiguously — he was purchasing canopies from Dick's. The district court did not dispute his invitee status. ER 12. To a business invitee, a possessor of land owes a duty to exercise reasonable care to inspect the premises, discover dangerous conditions, and remedy them or warn of their existence. *Pedroza v. Bryant*, 101 Wn.2d 226, 228 (1984); *Tincani v. Inland Empire Zoological Soc'y*, 124 Wn.2d 121, 138–39 (1994).

24

Both duties were triggered by the events of October 10, 2021. The common-carrier duty attached because Dick's, through its employee, was operating the escalator vis-à-vis Price at the moment of the injury. The premises liability duty attached because Price was a business invitee on Dick's premises. The district court erred to the extent it analyzed this case solely through the lens of traditional premises liability — looking for a pre-existing static hazard and notice of that hazard — without applying the elevated common-carrier duty that Smith's direction of Price onto the escalator triggered.

## C. Dick's Employee Smith Created the Dangerous Condition by Affirmatively Leading Price Onto the Escalator with Bulky, Hazardous Merchandise — In Violation of Dick's Own Policies.

The district court's analysis rested on a fundamental mischaracterization of the dangerous condition at issue. The court looked for a defect in the escalator mechanism, found none, and concluded that Dick's had not breached any duty. ER 10–11. But Price's theory of liability does not depend on a mechanical defect. Price's theory is that Smith's affirmative conduct — the act of leading Price, carrying two large tent canopies, onto a moving escalator when the elevator was available and when Dick's own Vertical Transportation Policy required its employees to direct customers with heavy or bulky items to the elevator — created a dangerous condition on Dick's premises. The dangerous condition was not a broken stair or a

25

malfunctioning motor. The dangerous condition was the situation Smith created: a customer aboard a moving staircase, carrying large items that were foreseeably likely to shift, slip, or be "kicked out" by the moving stairs, without any warning, without any safety precaution, and without having been offered the manifestly safer alternative of the elevator.

Washington courts recognize, and have long recognized, that an employee's affirmative conduct can create a dangerous condition giving rise to landowner liability, independently of any pre-existing static hazard. This principle finds its clearest expression in *Pimentel v. Roundup Co.*, 100 Wn.2d 39 (1983). In *Pimentel*, the Washington Supreme Court held that in a self-service retail setting, when the proprietor's methods of operation make the existence of unsafe conditions reasonably foreseeable, the plaintiff need not prove that the store had actual or constructive notice of the specific hazardous condition that caused the injury. *Id.* at 49. The court reasoned that "modern techniques of merchandising necessitate some modification of the traditional rules of liability" and that the foreseeability of conditions created by the store's own mode of operation can substitute for the notice requirement of traditional slip-and-fall doctrine. *Id.* at 46, 49. The *Pimentel* exception "merely eliminates the need for establishing notice and does not shift the burden to the defendant to disprove negligence." *Id.* at 49.

The mode-of-operation doctrine of *Pimentel* applies directly to the facts of this case. Dick's operated a large-format sporting goods retail store in which

customers regularly selected large, heavy merchandise from upper-floor display areas and required assistance transporting that merchandise to the first-floor checkout registers. The store's design — merchandise displayed on the second floor, checkout on the first floor — made it foreseeable that customers would regularly be moving heavy items between floors. The only routes from the second floor to the first floor were the escalators and an elevator. Dick's recognized the risk: it erected two signs directing customers to the elevator, and it maintained a formal Vertical Transportation Policy requiring employees to direct customers with heavy or bulky items to the elevator. ER 113; ER 101. That policy's existence is powerful evidence that Dick's itself understood — before October 10, 2021, and as a matter of institutional knowledge — that customers carrying such items posed a foreseeable risk of harm if directed onto the escalators instead of the elevator.

When Smith chose, for the convenience of speed, to lead Price onto the escalator rather than the elevator, he was not exercising independent personal judgment divorced from his role as Dick's agent. He was acting as Dick's employee in the course of his employment — assisting a customer with store merchandise — and making operational decisions on Dick's behalf. Dick's is responsible for those decisions. Smith's violation of Dick's Vertical Transportation Policy is not merely evidence of Smith's individual negligence; it is evidence that Dick's failed to train its employees to implement a safety policy that the store itself had recognized as necessary. The failure of training is Dick's institutional failure. The act of leading

26

Price onto the escalator is Dick's act, through its agent. And the injury that resulted from that act is Dick's responsibility.

The Washington Supreme Court's recent decision in *Galassi v. Lowe's Home Centers, LLC*, 4 Wn.3d 425 (2025), reaffirms the central role of foreseeability in Washington premises liability cases. *Galassi* makes clear that the question at the heart of premises liability is whether the dangerous condition was one that the proprietor, exercising reasonable care, should have foreseen and guarded against. *Galassi*, 4 Wn.3d at 428. Here, the evidence of foreseeability is substantial and direct: Smith's own deposition admissions, H.R. Smith's acknowledgment that a sudden escalator stop "potentially endangers riders," the existence and content of Dick's Vertical Transportation Policy, and the simple, undeniable physical reality of carrying large, awkward items on a moving staircase. This evidence, viewed in the light most favorable to Price, more than suffices to create a jury question on the foreseeability of the dangerous condition Smith created. The district court's contrary conclusion was not a permissible resolution of undisputed facts; it was an impermissible resolution of the genuinely disputed issue of foreseeability — an issue that belongs to a jury.

Nor can Dick's argue that Smith's conduct was some kind of superseding intervening cause that broke the chain of liability between Dick's and Price's injury. Smith was not an independent third party; he was Dick's employee acting in the scope of his employment. His act in leading Price onto the escalator was Dick's act.

His failure to consult or apply the Vertical Transportation Policy was Dick's failure. The dangerous condition he created was created on Dick's behalf, with Dick's resources, in furtherance of Dick's business. Under established principles of respondeat superior and the law of agency, Dick's is directly and vicariously liable for Smith's conduct.

## D. The District Court Misread Tinder v. Nordstrom.

The district court relied heavily on *Tinder v. Nordstrom*, 84 Wash. App. 787 (1997), for the proposition that an abrupt or unexplained escalator stop does not establish negligence. ER 10. But the district court's reliance on *Tinder* was misplaced, because the critical factual distinction between *Tinder* and this case — the presence and role of an employee in creating the risk — renders *Tinder* fundamentally inapposite.

In *Tinder*, the plaintiff was descending an escalator while carrying packages when the escalator stopped abruptly. 84 Wash. App. at 789. There was no evidence of any defect in the escalator's mechanical components. There was no evidence of any employee involvement in the events leading to the stop. There was no evidence that any Nordstrom employee had directed the plaintiff onto the escalator, had assisted the plaintiff in any way, or had done anything to create or exacerbate any risk. The plaintiff was simply a customer who had chosen to use the escalator while carrying packages, and the escalator stopped. On those facts — and only on those

facts — the *Tinder* court held that the unexplained stop, standing alone, was insufficient to establish negligence. *Id.* at 793–94.

This case is materially distinguishable from *Tinder* in precisely the ways that matter most. First, there is direct, uncontested evidence that a Dick's employee — Smith — affirmatively led Price onto the escalator, made the choice to use the escalator rather than the elevator, descended the escalator first (taking the heavy weights himself and leaving Price to manage the bulky canopies), and never warned Price of any risk or offered the elevator as an alternative. ER 4; ER 24; ER 113. This is not a case of a customer unilaterally choosing to use the escalator with merchandise. It is a case of a store employee directing a customer onto the escalator with merchandise, as part of the employee's job function of assisting the customer with the store's goods. Second, Dick's had a formal written policy — the Vertical Transportation Policy — that specifically addressed the situation of customers using escalators with items that could pose a risk, and required employees to direct such customers to the elevator. ER 113; ER 101. Smith violated that policy. The existence of that policy, and its violation, creates a triable issue of breach that was entirely absent from *Tinder*. Third, Smith admitted in his deposition that he chose the escalator because it was "the quicker way down" — an admission that he exercised a choice, that an alternative existed, and that his choice was made for reasons of convenience rather than safety. ER 24–25. This admission of a deliberate choice,

29

made in violation of an applicable safety policy, is powerful evidence of negligence that was entirely absent in *Tinder*.

The district court noted that "this case is even less favorable to plaintiff because the stop was not unexplained — it occurred only after plaintiff dropped the merchandise onto the escalator mechanism." ER 10. This observation, which the court offered as a reason to apply *Tinder* and find for Dick's, actually points in precisely the opposite direction. The fact that the stop was caused by the tent canopy slipping from Price's grip is not a neutral fact that exonerates Dick's; it is a fact that is directly traceable to Smith's conduct. Price was carrying those tent canopies on that escalator because Smith led him there, assisted him with the weights, and left him to manage the canopies without warning. The canopy slipping is not an independent event that broke the causal chain — it is the foreseeable consequence of the dangerous condition Smith created. A jury should assess whether the chain of events leading from Smith's direction to Price's injury constitutes proximate causation. That assessment is not one for a court on summary judgment.

**E. Descriptions Such as "Violent" and "Abrupt" Are Relevant to Whether the Escalator Operated in a Manner Consistent with a Common Carrier's Duty of Highest Care.**

The district court cited *Wilcoxen v. Seattle*, 32 Wash.2d 734, 738 (1949), for the proposition that descriptive characterizations such as "violent" or "abrupt" —

used by Price to describe the escalator stop — do not, standing alone, establish negligence on the part of the escalator operator. ER 10. This proposition is legally correct as far as it goes. But the district court's application of *Wilcoxen* demonstrates the same fundamental error that pervades its entire analysis: the court treated Price's evidence in isolation rather than in its full context.

Price does not rely on the abrupt and violent character of the stop in isolation from the rest of the evidence. He does not contend that an abrupt stop, by itself, proves Dick's was negligent. His contention is that the abrupt and violent stop — occurring as the foreseeable consequence of a tent canopy being "kicked out" of a customer's grip by the moving escalator stairs — is one component of a broader chain of events whose foreseeability and breach are established by the totality of the evidence. That totality includes Smith's choice to use the escalator; Smith's violation of the Vertical Transportation Policy; Smith's failure to warn Price of any risk; H.R. Smith's acknowledgment that a sudden stop "potentially endangers riders"; the physical reality of carrying large, ungainly canopies on a moving staircase; and the common-carrier duty of highest care that required Dick's, through its employee, to take the utmost precautions for its passengers' safety.

Under the common-carrier standard, the question is not merely whether the escalator stopped abruptly; the question is whether every precaution compatible with the practical operation of the business was taken to ensure that passengers were safe. *Knutson*, 1 Wash. App. 2d at 545. Directing a passenger to board a moving staircase

while carrying items that were foreseeably likely to trigger a violent safety stop — instead of directing that passenger to an available elevator — is not consistent with the duty of highest care. A jury should decide whether Dick's met that demanding standard. The district court's contrary conclusion, reached by fragmenting Price's evidence and applying *Wilcoxen* as if Price's sole evidence were his subjective characterization of the stop, was legal error that warrants reversal.

19

## II. THE DISTRICT COURT ABUSED ITS DISCRETION IN REFUSING TO CONSIDER PRICE'S OPPOSITION BRIEF BECAUSE THE DELAY RESULTED FROM CIRCUMSTANCES ENTIRELY OUTSIDE COUNSEL'S CONTROL AND CONSTITUTED EXCUSABLE NEGLECT.

### A. The Excusable Neglect Standard Is Equitable and Multifactorial.

Federal Rule of Civil Procedure 6(b)(1)(B) provides that where a party fails to act within a specified time, the court may extend the time "on motion made after the time has expired if the party failed to act because of excusable neglect." In *Pioneer Investment Services Co. v. Brunswick Associates Ltd. Partnership*, 507 U.S. 380 (1993), the Supreme Court addressed the scope of the excusable neglect standard in the context of the federal rules and held that the inquiry is "at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission." *Id.* at 395. The Supreme Court identified four non-exclusive factors

relevant to the analysis: (1) the danger of prejudice to the opposing party; (2) the length of the delay and its potential impact on judicial proceedings; (3) the reason for the delay, including whether it was within the reasonable control of the movant; and (4) whether the movant acted in good faith. *Id.*

The Ninth Circuit has applied the *Pioneer* framework with careful attention to its equitable character. In *Ahanchian v. Xenon Pictures, Inc.*, 624 F.3d 1253 (9th Cir. 2010), this Court emphasized that the excusable neglect analysis is "an equitable determination that takes into account all relevant circumstances" and that courts should approach it with awareness of the broader federal policy favoring resolution of disputes on their merits rather than on procedural technicalities. *Id.* at 1261. This Court has further cautioned that procedural defaults should not be mechanically enforced when they produce unjust results. *Bateman v. United States Postal Service*, 231 F.3d 1220, 1224 (9th Cir. 2000). The excusable neglect standard was designed to provide a safety valve against the harsh and sometimes arbitrary operation of filing deadlines — particularly in circumstances, such as the present, where a party's new counsel inherits a matter in medias res under conditions that make strict compliance with existing deadlines impossible.

**B. All Four Pioneer Factors Weigh in Price's Favor.**

**(1) Danger of Prejudice to the Opposing Party.**

Dick's suffered no cognizable prejudice from Price's thirty-one-day delay. The district court itself acknowledged — and Dick's counsel conceded at oral argument — that the court reviewed all of the exhibits submitted with Price's opposition brief. ER 7; ER 22. Dick's therefore had the benefit of a full factual record compiled by Price's counsel, notwithstanding the lateness of the filing. Dick's also received a complete opportunity to review Price's legal arguments — it filed a detailed reply brief on January 5, 2026, well after the submission of Price's opposition on December 17, 2025. ER 40. The parties then appeared for oral argument before the court on January 13, 2026, at which both sides had a full opportunity to present their positions. ER 14–36. No trial date had passed; the trial was scheduled for February 23, 2026, more than thirty days after Price's opposition was filed. No witness availability was disrupted. No discovery was compromised. Dick's received every substantive protection it was entitled to under the Federal Rules. The prejudice factor weighs decisively in Price's favor.

**(2) Length of the Delay and Its Impact on Judicial Proceedings.**

A thirty-one-day delay is not trivial, and Price does not suggest otherwise. But the question under *Pioneer* is whether the length of the delay had a material impact on judicial proceedings — and here, the answer is that it did not. Discovery had closed on December 1, 2025. ER 54. The trial was not scheduled until February 23, 2026 — approximately sixty-seven days after Price's December 17, 2025 filing. The

court had adequate time to review the briefing, conduct oral argument on January 13, 2026, and issue a well-reasoned decision on January 15, 2026. The thirty-one-day delay did not require the court to reschedule any hearing, extend any other deadline, postpone the trial, or alter the proceedings in any material way. Under controlling Ninth Circuit precedent, a delay of this nature and with this limited impact on the proceedings does not foreclose a finding of excusable neglect. *See Briones v. Riviera Hotel & Casino*, 116 F.3d 379, 381–82 (9th Cir. 1997) (per curiam).

**(3) Reason for the Delay — The Most Important Factor.**

The reason for the delay is the most critical of the four *Pioneer* factors. *Ahanchian*, 624 F.3d at 1261. Here, the reason is both compelling and entirely outside new counsel's reasonable control. Sarah L. Lee entered her appearance in this case on November 7, 2025 — just six days before the then-existing opposition deadline of November 13, 2025. ER 6; ER 54. She was not the attorney who had developed the case, taken the depositions, or compiled the discovery record. She was a new attorney inheriting a case file that, by her account, was incomplete. ER 54. Former counsel had not transmitted the full case file to her by the time of entry. ER 54. This is not a situation of new counsel's making; it is the systemic reality of attorney transitions in active litigation.

35

Compounding the file-transmission problem was the unavailability of the deposition transcript. Price's deposition was a critical component of the opposition — indeed, it is extensively cited in the exhibits that the district court ultimately reviewed. ER 114. But the court reporter who had recorded Price's deposition was out of the country and unable to produce the transcript promptly. ER 55. New counsel was therefore unable to obtain one of the most important evidentiary materials for the opposition, through no fault of her own and no fault of Price's.

Price himself was out of state during the critical preparation period. ER 55. This complicated new counsel's ability to confer with her client, obtain his input on the factual narrative, and secure any additional evidentiary submissions that required his participation. And defense counsel — whose agreement to a further extension might have ameliorated the situation — was on vacation from November 24 through November 28, 2025, a period that overlapped directly with the final push toward the December 5, 2025 deadline. ER 55.

Taken together, these circumstances paint a picture of a new attorney dealing in good faith with a cascade of obstacles, none of which she created and none of which she could reasonably have overcome in the time available. The Ninth Circuit has found excusable neglect in circumstances of comparable or lesser difficulty. *See Briones*, 116 F.3d at 381–82. There is no basis in the record for any inference that the delay was strategic, designed to gain an advantage, or in any way the product of intentional or reckless disregard for the court's deadlines. The district court's

contrary finding — that the circumstances did not constitute excusable neglect — cannot be reconciled with the equitable, multifactorial standard that *Pioneer* and *Ahanchian* require.

**(4) Good Faith.**

The record is unambiguous that Price's counsel acted in good faith at every stage of the proceedings following her entry into the case. She entered her appearance promptly, requested a re-noting of the summary judgment motion rather than simply allowing the deadline to pass without action, communicated with defense counsel about the status of the briefing, filed the opposition brief as soon as practicable once she had assembled the necessary materials, and responded expeditiously and fully to the Court's Order to Show Cause. ER 54–56. There is no suggestion anywhere in the record that counsel's delay was designed to gain a tactical advantage, to protract the litigation, or to prejudice Dick's in any way. The good faith factor weighs in Price's favor.

**C. Even If the Brief Were Properly Stricken, the Court Retained an Independent Duty to Review the Exhibits.**

Even if this Court were to conclude — contrary to the analysis above — that the district court did not abuse its discretion in declining to consider the text of Price's opposition brief, a second and independent ground for reversal remains: the

37

district court, having reviewed the exhibits, failed to give them the consideration that the law requires on summary judgment.

As the district court recognized, even when a party's opposition brief is not considered, the court retains an independent obligation to search the record to determine whether the evidence presents a genuine issue of material fact. ER 7; *Henry v. Gill Industries, Inc.*, 983 F.2d 943, 950 (9th Cir. 1993); *Marshall v. Gates*, 44 F.3d 722, 725 (9th Cir. 1995). The court may not simply accept the movant's characterization of the facts because the nonmovant's brief has been stricken. The court must independently examine the record and draw all reasonable inferences in the nonmovant's favor. *Anderson*, 477 U.S. at 255.

Here, the district court's alternative analysis fell short of this standard. The court reviewed the exhibits but drew inferences against Price rather than in his favor. It treated the escalator's mechanical functionality as evidence that Dick's had not breached any duty, when the exhibits clearly showed that Smith had violated the Vertical Transportation Policy. ER 113. It treated the absence of a pre-existing static defect as the absence of any dangerous condition, when Smith's deposition testimony showed that he had affirmatively led Price onto the escalator without offering the elevator. ER 24; ER 113–114. And it concluded that the second camera evidence was insufficient to support a spoliation claim, when the photographs in the record plainly showed a second camera above the downward escalator. ER 115–116. A proper application of the summary judgment standard — viewing all evidence in

38

Price's favor and drawing all reasonable inferences in his direction — required the denial of Dick's motion.

30

## III. THE DISTRICT COURT ERRED IN DENYING PRICE'S RULE 56(d) REQUEST FOR A CONTINUANCE PENDING FULL DISCOVERY.

### A. Rule 56(d) Authorizes a Continuance When Discovery Necessary to Oppose Summary Judgment Remains Outstanding.

Federal Rule of Civil Procedure 56(d) provides that "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." The purpose of the rule is to protect a nonmoving party who faces a summary judgment motion before it has had a full and fair opportunity to obtain the evidence it needs to respond. It is a rule of fundamental fairness — an acknowledgment that the adversarial system cannot function justly if one party can move for summary judgment before the other has had adequate access to the evidence.

The Ninth Circuit has construed Rule 56(d) broadly in favor of the nonmoving party. *Metabolife Int'l, Inc. v. Wornick*, 264 F.3d 832, 846 (9th Cir. 2001). In *Metabolife*, this Court held that Rule 56(d) "should be liberally granted when the

39

requesting party has diligently pursued discovery." *Id.* The Court cautioned against denying Rule 56(d) relief when doing so would effectively penalize a party for the opposing party's own discovery failures or delays. *Id.* A continuance under Rule 56(d) should be denied only where the requesting party has not diligently pursued discovery or where the party cannot specifically identify how additional discovery would create a genuine issue of material fact. *Family Home & Finance Center, Inc. v. Federal Home Loan Mortgage Corp.*, 525 F.3d 822, 827 (9th Cir. 2008). Neither of those denial conditions is present here.

Price diligently pursued discovery. He served discovery requests that called for production of all surveillance footage from the incident. ER 106; ER 117. Dick's responded that no additional footage existed. ER 106; ER 117. That representation was false — as the photographs in the record demonstrate. ER 115–116. A party who obtains a false discovery response cannot be faulted for failing to pursue what it has been falsely told does not exist. Moreover, Price identified with specificity the categories of evidence that additional discovery would produce: surveillance footage from the second camera, elevator usage records for October 10, 2021, escalator maintenance and inspection records, and training records showing whether and how Dick's had trained its employees on the Vertical Transportation Policy. ER 107–108. These are not vague categories of potentially relevant information; they are precisely targeted categories of evidence directly relevant to the claims at issue.

**B. Price's Opposition Brief Contained a Sufficient Rule 56(d) Request.**

Price's opposition brief, filed December 17, 2025, expressly and in unambiguous terms requested a continuance under Federal Rule of Civil Procedure 56(d) in the alternative to its primary request for denial of summary judgment on the merits. ER 107–108. The brief stated: "Plaintiff respectfully requests that this Court continue summary judgment consideration until defendant fully complies with plaintiff's previous discovery requests pursuant to FRCP 56(d) and (f)." ER 107– 108. The brief then identified the specific categories of outstanding discovery with precision: additional camera footage, elevator usage records, escalator maintenance and inspection records, posted signage and warning records, and employee training materials concerning the Vertical Transportation Policy. ER 108. Each of these categories of evidence was identified as essential to Price's ability to establish breach, notice, causation, and the spoliation claim regarding the second camera.

The district court found that Price "did not file a Rule 56(d) motion or submit the required affidavit or declaration" and further found that Price "did not identify what specific facts the sought-after discovery would reveal." ER 8. Both findings are contradicted by the record — Price's brief contained the request and the specific identification, as described above — and both findings reflect the fundamental circularity of the district court's approach: the court declined to read the brief and then made findings premised on the absence of information contained in the brief it declined to read.

**41**

There is no requirement under Rule 56(d) that the request be made in a separate, standalone motion distinct from the opposition brief. Rule 56(d) requires a showing "by affidavit or declaration" of the reasons the party cannot present essential facts. The rule was designed to be practical, not hypertechnical. Price's counsel also raised the Rule 56(d) request during oral argument. ER 30 (Ms. Lee: "I did request that in my initial response as part of the alternative forms of relief."). The district court's refusal to treat this as a proper Rule 56(d) request — particularly in light of the court's own refusal to read the brief that contained the request — was not a legally permissible ground for denial.

## C. The District Court's Rejection of the Rule 56(d) Request Was Circular and Constituted an Abuse of Discretion.

The district court's denial of Price's Rule 56(d) request rested on a logical impossibility of the court's own making. The court refused to consider Price's opposition brief. ER 7. The court then found that Price had not made a Rule 56(d) showing. ER 8. But the Rule 56(d) showing was contained in the brief the court refused to consider. This is circular reasoning: the court created the evidentiary deficiency it then cited as the basis for denial. This Court has consistently held that a party cannot be prejudiced by the court's own procedural decision to exclude its submissions, and the district court's bootstrap reasoning here falls squarely within the category of abuses of discretion that this Court has identified and rejected.

42

The circularity is even more pronounced in the context of the first *Ahanchian* factor — whether the delay was within counsel's reasonable control. The district court found that new counsel's circumstances did not constitute excusable neglect and refused to read the brief. It then found — on the basis of the brief it had refused to read — that Price had not made an adequate Rule 56(d) showing. The two findings reinforce each other in a closed loop: refusing to read the brief is justified by the excusable neglect finding; the inadequacy of the Rule 56(d) showing is produced by refusing to read the brief. This kind of self-referential reasoning is precisely what the equitable principles underlying both Rule 6(b)(1)(B) and Rule 56(d) are designed to prevent.

The Ninth Circuit's command in *Metabolife* is that Rule 56(d) requests must be "liberally granted when the requesting party has diligently pursued discovery." 264 F.3d at 846. The district court did not assess whether Price had diligently pursued discovery. It did not assess what specific facts the second camera footage would reveal. It did not assess whether those facts would create a genuine issue of material fact. It did none of the analytical work that Rule 56(d) review requires — because it had refused to read the brief. That failure to conduct the required analysis was itself an abuse of discretion.

**D. Additional Discovery — Particularly Footage from the Second Camera — Was Material and Could Have Defeated Summary Judgment.**

43

The centrality of the second camera footage to Price's case cannot be overstated. Price's primary evidence of negligence — Smith's deposition testimony — is inherently limited in what it can establish about the mechanics of the incident. Smith descended the escalator ahead of Price and was therefore not in a position to directly observe the moment the canopy was kicked from Price's grip, the manner in which Price's body responded to the abrupt stop, the precise location of Price relative to the escalator stairs at the moment of the stop, or the full sequence of events from the moment they stepped onto the escalator to the moment of the injury. ER 113–114.

The second camera, positioned directly above the downward escalator, would have captured all of these critical details. ER 115–116. It would have shown the approach to the escalator — establishing whether Smith paused, whether signs were visible, whether any other option was offered. It would have shown Price and Smith on the escalator — establishing the positions of the merchandise relative to the stairs, the manner in which the canopy was being held, and the moment and manner of the "kick." It would have shown the stop — establishing the violence of the event and Price's physical response. And it would have shown the immediate aftermath — Price's movement, expression of pain, and reaction.

This footage goes to the heart of every disputed element: whether Smith's conduct was negligent in directing Price onto the escalator, whether the manner of descent was reasonably safe under the common-carrier standard, and whether the

abrupt stop was a foreseeable consequence of carrying the canopies on the moving staircase. A Rule 56(d) continuance for the purpose of compelling the production of that footage — or at minimum establishing through spoliation proceedings what that footage would have shown — was not merely authorized by Rule 56(d). It was compelled by the fundamental principle that summary judgment must not be granted on a record from which critical, case-determinative evidence has been concealed by the opposing party. *Metabolife*, 264 F.3d at 846. The district court's denial of that request constituted an abuse of discretion that this Court should reverse.

36

## IV. THE DISTRICT COURT ERRED IN REJECTING PRICE'S SPOLIATION ARGUMENT BECAUSE PHOTOGRAPHS IN THE RECORD CONFIRM THE EXISTENCE OF AN UNDISCLOSED SECOND CAMERA.

### A. Spoliation and the Duty to Preserve.

The spoliation doctrine reflects a fundamental principle of evidence law and procedural fairness: a party that controls relevant evidence has an obligation to preserve it once it reasonably anticipates that litigation may arise from the events to which that evidence relates. Federal Rule of Civil Procedure 37(e) provides the framework for sanctions when a party fails to meet that obligation with respect to electronically stored information. Rule 37(e) authorizes the court to impose a range

45

of sanctions — including, upon a finding of intent to deprive, an instruction to the jury to presume that the lost information was unfavorable to the party responsible for its loss — when electronically stored information that should have been preserved is lost because the responsible party failed to take reasonable steps to preserve it. Fed. R. Civ. P. 37(e)(2)(B).

The duty to preserve arises not from the filing of a complaint or the service of formal discovery, but from the moment the potential litigant "knows or reasonably should know" that the evidence may be relevant to anticipated litigation. *United States v. Kitsap Physicians Service*, 314 F.3d 995, 1001 (9th Cir. 2002). The Ninth Circuit has endorsed the widely cited formulation that the duty arises "as soon as a potential claim is identified." *See id.*; *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 216 (S.D.N.Y. 2003). This formulation does not require a lawsuit to have been filed; it does not require litigation to have commenced; it does not require formal notice of a claim. It requires only that the party knows or should know that litigation is a reasonably foreseeable consequence of the events in question.

On October 10, 2021, Dick's Sporting Goods was on actual notice — not constructive notice, not reasonably anticipated notice, but actual, contemporaneous, firsthand notice — that one of its customers had been injured on its premises. The injury occurred in the presence of Dick's employees. Dick's employees were the direct participants in the events leading to the injury. Dick's employees filed an incident report documenting the event. An on-premises injury to a customer,

attended by multiple Dick's employees, generating a contemporaneous incident report, and involving the potential violation of Dick's own Vertical Transportation Policy, is precisely the category of event that a large retail corporation should understand as likely to result in litigation. Dick's duty to preserve all surveillance footage showing the area of the incident — including footage from every camera in a position to capture the events — arose on October 10, 2021.

Surveillance camera footage is, in the digital age, a category of electronically stored information that commercial establishments routinely preserve — or routinely allow to be overwritten through automatic cycling — depending on whether they have reason to retain it. Dick's, having actual notice of a customer injury on its premises on October 10, 2021, was obligated to immediately identify all cameras that may have captured the incident and to take affirmative steps to ensure their footage was preserved. The industry standard for surveillance video retention cycles — typically between thirty and ninety days in the absence of a preservation hold — means that the failure to act promptly results in automatic destruction of the footage. Dick's failure to preserve footage from the second camera, in the context of actual notice of a customer injury, constitutes precisely the "failure to take reasonable steps to preserve" that Rule 37(e) contemplates.

**B. The Record Evidence — Photographs — Establishes the Existence of the Second Camera.**

47

The district court's finding that "plaintiff offers no evidence that any additional surveillance footage ever existed" is clearly erroneous in light of the evidence in the record. ER 9. Price submitted photographs demonstrating the physical existence of a second camera positioned directly above the downward escalator. ER 115–116. These photographs were submitted as exhibits and were part of the record before the court on summary judgment. The photographs were annotated to identify the camera positions: the "Red" camera — the camera above the upward escalator, whose partial footage Dick's produced — and the "Yellow" camera — the camera above the downward escalator, whose footage Dick's never produced and whose existence Dick's never disclosed. ER 117.

Dick's response to Price's Interrogatory No. 7 stated unequivocally that "No other video footage or other photographs exists" beyond what had already been produced. ER 106; ER 117. The photographs in the record at ER 115–116 prove that statement was false. A camera physically mounted above the downward escalator necessarily captured footage of events occurring in that area — including the events of October 10, 2021. The existence of the camera is not a matter of inference or speculation; it is documented in photographs that are part of the summary judgment record. The district court's finding to the contrary — that Price offered "no evidence" — represents a clearly erroneous assessment of the record that constitutes reversible error.

**48**

The district court suggested that the gap between the incident (October 2021) and the complaint (June 2024) undermined Price's spoliation argument — implying that by June 2024, the footage would no longer have been available regardless of Dick's conduct. ER 9. But this suggestion misapprehends the spoliation doctrine in two fundamental respects. First, the duty to preserve arose in October 2021, not June 2024. If Dick's failed to preserve the footage in October 2021 — when it had actual notice of the incident and the footage was still available — the destruction that followed from that failure is Dick's responsibility, regardless of how much time passed before the complaint was filed. The Ninth Circuit has not imposed a bright-line rule requiring the filing of a complaint as a precondition to the duty to preserve. *Kitsap*, 314 F.3d at 1001. Second, the length of time between the incident and the complaint is itself a factor that supports, not undermines, the spoliation argument: the longer Dick's was able to represent that no additional footage existed, the more thoroughly it was able to conceal the destruction of the second camera's footage from Price and the court.

It is no answer to say that Price could or should have identified the second camera's existence through independent investigation during the three years between the incident and the filing of the complaint. Price was not at the store conducting investigations; he was a customer who had been injured. He was dependent on Dick's honest compliance with its discovery obligations to learn what evidence existed. Dick's told him no other footage existed. He had every reason to rely on that

49

representation. The photographs that ultimately exposed the falsity of Dick's discovery response came from the record assembled with difficulty during litigation — not from any source available to Price before discovery began.

## C. Dick's Failure to Disclose the Second Camera Warrants an Adverse Inference Instruction.

The combination of facts presented in this record — the physical existence of a second camera documented by photographs, Dick's affirmative false representation in discovery that no other footage existed, Dick's actual notice of the incident on the date it occurred, Dick's failure to preserve or disclose footage from the second camera, and the absence of any explanation from Dick's for what happened to that footage — collectively creates at minimum a triable issue of fact as to whether Dick's acted with intent to deprive Price of the use of that information in this litigation.

Federal Rule of Civil Procedure 37(e)(2) provides that where a court finds that the party that failed to preserve electronically stored information "acted with the intent to deprive another party of the information's use in the litigation, the court: (A) may presume that the lost information was unfavorable to the party; (B) may instruct the jury that it may or must presume the information was unfavorable to the party; or (C) may dismiss the action or enter a default judgment." Fed. R. Civ. P. 37(e)(2). The most commonly invoked sanction — and the one most appropriate to

50

the facts of this case — is subsection (B): an instruction to the jury that it may presume the lost footage was unfavorable to Dick's.

An adverse inference instruction, if given, would have been powerfully consequential in this case. The jury would have been permitted to presume that the second camera's footage showed exactly what Price has contended: that Smith led Price onto the escalator without offering the elevator, that the canopy was kicked from Price's grip by the escalator stairs, and that Price's body was thrown violently forward upon the abrupt stop. These presumptions, if adopted by the jury, would establish breach, causation, and the mechanism of injury — precisely the elements that Dick's argued were unsupported by sufficient evidence. The availability of an adverse inference instruction did not merely create a factual issue for trial; it undermined the very premise of Dick's summary judgment motion. Dick's moved for summary judgment on the ground that Price could not establish essential elements of his claim. But if an adverse inference is available — presuming that the missing footage established those elements — then Dick's cannot obtain summary judgment on a record from which it has withheld critical evidence.

The district court's rejection of the spoliation argument on the ground that Price offered "no evidence" of the additional footage was clearly erroneous. ER 9. The photographs at ER 115–116 are evidence. Dick's false discovery response at ER 106 is evidence. The annotations at ER 117 are evidence. And the absence of any explanation from Dick's for the fate of the second camera's footage is itself evidence

— evidence from which a jury could draw the inference that Dick's had something to hide. All of this evidence, viewed in the light most favorable to Price, was sufficient to create a triable issue requiring submission of the spoliation claim to a jury. The district court's contrary conclusion was legal error, and this Court should reverse.

**CONCLUSION**

For all of the foregoing reasons, Appellant Justin Price respectfully requests that this Court reverse the district court's Order granting summary judgment in favor of Defendant-Appellee Dick's Sporting Goods, Inc. and remand this case for further proceedings consistent with this Court's opinion, including a trial before a jury on Price's negligence claims.

The district court committed multiple, compounding legal errors. It applied the wrong legal framework by treating this as a mechanical-defect case when the record evidence established an employee-created dangerous condition. It abused its discretion by refusing to consider Price's opposition brief in circumstances that plainly satisfied the equitable excusable neglect standard — denying Price the right to have his evidence and arguments considered in full. It engaged in circular reasoning by faulting Price for not making a Rule 56(d) showing that was contained in the very brief it had refused to read. And it reached a factually insupportable

conclusion on the spoliation issue by finding "no evidence" of the second camera's existence when photographs in the record plainly showed otherwise.

The evidence in this record — viewed, as Rule 56 requires, in the light most favorable to Price — compels the conclusion that genuine issues of material fact exist on every contested element of Price's negligence claim. Smith's deposition admissions establish that he affirmatively led Price onto the escalator and chose not to offer the elevator. Dick's Vertical Transportation Policy establishes the existence of a safety obligation and Smith's violation of it. H.R. Smith's acknowledgment that a sudden escalator stop "potentially endangers riders" establishes that the danger was foreseeable and known. The photographic evidence establishes the existence of a second camera that captured footage Dick's never disclosed. And the record as a whole establishes that Price — an ordinary customer who did everything right by asking for help and following his store employee's lead — was injured as the direct, foreseeable consequence of Dick's employee's operational decision.

Justin Price is entitled to have these facts evaluated by a jury. The Constitution guarantees it. The Federal Rules of Civil Procedure require it. And justice demands it. This Court should reverse the judgment below.

In the alternative, if this Court determines that outright reversal is not warranted, Price respectfully requests that this Court remand with instructions directing the district court to: (1) consider Price's opposition brief in full, applying the excusable neglect analysis as required by *Pioneer* and *Ahanchian*; (2) rule on

Price's Rule 56(d) continuance request on the merits, considering the specific evidence identified in Price's brief and at oral argument; and (3) conduct a spoliation hearing pursuant to Federal Rule of Civil Procedure 37(e) to determine whether the second camera's footage was destroyed after the duty to preserve arose, and if so, to impose appropriate sanctions including the availability of an adverse inference instruction at trial.

Justin Price went to Dick's Sporting Goods as a customer. He asked for help with heavy merchandise. He followed his store employee's lead. He was injured on Dick's premises as a direct result of Dick's employee's choices. He deserves his day in court.

Respectfully submitted,

Sarah L. Lee, WSBA No. 27364

Trial Lawyer

705 S. 9th St., Suite #104

Tacoma, WA 98405

Telephone: (253) 234-5614

Email: Sarah3@sarahleelaw.com

*Attorney for Appellant Justin Price*

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(a)(7)(C), I hereby certify that this brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains fewer than 14,000 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f). I further certify that this brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in Times New Roman, 14-point font, with double-spaced body text throughout.

Sarah L. Lee, WSBA No. 27364

Trial Lawyer

705 S. 9th St., Suite #104

Tacoma, WA 98405

*Attorney for Appellant Justin Price*

## CERTIFICATE OF SERVICE

I hereby certify that on June 8, 2026, I electronically filed the foregoing Opening Brief of Appellant Justin Price with the Clerk of the United States Court of Appeals for the Ninth Circuit using the Court's CM/ECF system. All parties appearing in this case are represented by counsel who are registered users of the

CM/ECF system, and service will be accomplished electronically through that system upon the completion of filing. No parties require service by other means.

Sarah L. Lee, WSBA No. 27364

Trial Lawyer

705 S. 9th St., Suite #104

Tacoma, WA 98405

Telephone: (253) 234-5614

Email: Sarah3@sarahleelaw.com

*Attorney for Appellant Justin Price*